Argued and submitted January 31, affirmed April 24, 2013

McPHILLIPS FARM, INC.;
Helen Pritchett,
Trustee of the Edward L. Pritchett Family Trust;
Carl L. Bergstrom;
and Linda J. Bergstrom,
*Petitioners*,

*v.*

YAMHILL COUNTY;
and Riverbend Landfill Company, Inc.,
*Respondents*.

Land Use Board of Appeals
2012027; A152964

300 P3d 299

William K. Kabeiseman argued the cause for petitioners. With him on the brief was Garvey Schubert Barer.

Tommy A. Brooks argued the cause for respondent Riverbend Landfill Company, Inc. With him on the brief were James E. Benedict and Cable Huston Benedict Haagensen & Lloyd LLP.

No appearance for respondent Yamhill County.

Before Ortega, Presiding Judge, and Sercombe, Judge, and Hadlock, Judge.

SERCOMBE, J.

## SERCOMBE, J.

The Land Use Board of Appeals (LUBA) has exclusive review authority over "land use decision[s]" made by local governments, state agencies, and special districts. ORS 197.825(1). This case concerns whether LUBA properly dismissed its review of a land use compatibility statement (LUCS) issued by Yamhill County certifying that a proposed state agency permit to construct a landfill berm was compatible with county land use laws. Petitioners sought a determination from LUBA that the county erred in making the compatibility determination in that LUCS. However, LUBA concluded that it lacked jurisdiction to grant petitioners' requested relief because the LUCS was not a "land use decision" as defined by ORS 197.015(10).

We review LUBA orders to determine, among other things, whether they are "unlawful in substance." ORS 197.850(9)(a). On judicial review, petitioners claim that the LUBA dismissal order was unlawful in substance because the LUCS was a "land use decision" and LUBA therefore had review authority. We conclude that LUBA correctly decided that the LUCS was not a "land use decision" under ORS 197.015(10)(b)(H), which sets out exclusions from the definition of that term. Accordingly, we affirm LUBA's opinion and order.

We take the facts from LUBA's opinion and order and the local government record and begin with a description of the county's LUCS certification and its historical context. Respondent Riverbend Landfill Company, Inc., owns property near the South Yamhill River in Yamhill County that is used as a solid waste disposal facility ("landfill").[1] In 1980, the county approved changes to its comprehensive plan and zoning map to designate and rezone that property as "Public Works Safety" (PWS). Those actions were necessary to allow the development of a "sanitary landfill" on the property, a permitted use in the PWS zoning district. The comprehensive plan amendment included an "exceptions statement" that

---

[1] Respondent Riverbend Landfill Company, Inc., was an intervenor-respondent in the LUBA proceedings. Respondent Yamhill County does not appear on judicial review. Throughout this opinion, all references to "respondent" refer to only Riverbend Landfill Company, Inc.

justified the failure to apply the requirements of statewide planning Goals 3 (agricultural lands) and 4 (forest lands) to the plan-change for the proposed landfill facility. *See* OAR 660-015-0000(3),(4). The exceptions statement justified a proposed nonresource use of the property for a landfill based on the need for, and lack of alternatives to, the proposed facility, as well as the consequences and compatibility of its operations.[2] The proposed use was described as a "landfill" that "will include a berm to prevent leaching of the Yamhill River." At the same time, the county issued a conditional use permit for the deposit of fill on the part of the property located in the river's floodplain. That permit imposed conditions upon the engineering and construction of the proposed landfill. Respondent obtained a solid waste disposal permit for the facility from the Department of Environmental Quality (DEQ) in 1981 and, shortly afterward, constructed the berm and initial disposal cells of the landfill.

In December 1982, after the landfill began operations, the county adopted a new Yamhill County Zoning Ordinance (YCZO) that included site design review regulations (provisions for review and approval of preliminary and final site development plans). YCZO 1101.01 provided that the "site design review process is intended to guide future growth and development" and that the process applied "to all development in * * * [the] Public Facilities Districts," including the PWS district.

---

[2] Specifically, the findings pertained to the exceptions criteria in Goal 2, Part II that

"[a] local government may adopt an exception to a goal when:
"* * * * *

"(c) The following standards are met:

"(1) Reasons justify why the state policy embodied in the applicable goals should not apply;

"(2) Areas which do not require a new exception cannot reasonably accommodate the use;

"(3) The long-term environmental, economic, social and energy consequences resulting from the use of the proposed site with measures designed to reduce adverse impacts are not significantly more adverse than would typically result from the same proposal being located in areas requiring a goal exception other than the proposed site; and

"(4) The proposed uses are compatible with other adjacent uses or will be so rendered through measures designed to reduce adverse impacts."

In 1990, respondent sought DEQ approval to renew the 1981 solid waste disposal permit. As part of the permit renewal, respondent proposed to expand the landfill area on the rezoned property to include new disposal cells and to construct a new leachate holding lagoon as part of the stormwater management of the landfill. DEQ asked the county for a LUCS—a determination of whether the uses and activities allowed by the proposed permit were compatible with the county's comprehensive land use plan and regulations.[3]

In 1992, the county board of commissioners adopted an order authorizing a LUCS for the permit renewal. The order determined that the landfill use, including its expansion, was authorized by the earlier plan change and rezoning and did not need further land use approvals from the county. However, the order concluded that the leachate holding facility was an accessory use to the landfill and required site design review as a new facility. The order provided that

"[n]ew required accessory uses such as a new leachate storage lagoon or new holding tanks, would be permitted uses (as accessory to a sanitary landfill). However, because those uses would be facilities, establishment of the uses would be subject to site design review under the 1982 ordinance. The County draws a distinction between the primary landfill cell development which was contemplated in the original application and the development of modified

---

[3] Under ORS 197.180(1)(a) and (b), each state agency, including DEQ, is required to take actions "that are authorized by law with respect to programs affecting land use" in "compliance with the [statewide planning] goals, rules implementing the goals and rules implementing this section" and in "a manner compatible with acknowledged comprehensive plans and land use regulations." The Land Conservation and Development Commission (LCDC), in turn, has adopted rules requiring that local governments decide whether proposed state actions are compatible with local land use plans and regulations. OAR ch 660, div 31. Under OAR 660-031-0035(2), which is applicable to the type of permit at issue in this case,

"[s]tate agencies may rely on the affected local government's determination of consistency with the Statewide Planning Goals and compatibility with the Acknowledged Comprehensive Plan when the local government makes written findings demonstrating compliance with the goals or compatibility with the acknowledged plan in accordance with OAR 660-031-0026(2)(b)(B)."

A local government land use compatibility statement is not required for a renewal of an existing permit "except when the proposed permit would allow a substantial modification or intensification of the permitted activity." OAR 660-031-0040.

or new facilities proposed or required as accessory uses to landfill operations.

"The continued development of solid waste disposal cells contemplated in the original approval of the rezone and comprehensive plan amendment remains an outright permitted use. No land use approvals made by the County imposed restrictions on the lateral or vertical development of the Landfill within the PWS zone. Issues relative to the engineering or environmental safety or appropriateness of landfill design and operation were left to be addressed by DEQ in its review of the Landfill's operating permit."

Thus, the board concluded, and the LUCS provided, that the permit renewal was "compatible with Yamhill County's comprehensive plan and land use regulations, subject to site design review requirements for new facilities" for the leachate lagoon.

In 2012, respondent applied to DEQ for a modification of that solid waste disposal permit to allow replacement of the earthen berm along the western boundary of the landfill with a "mechanically stabilized earthen" (MSE) berm, as well as construction or modification of new facilities (a recycling facility, scales, a maintenance facility, and leachate storage tanks). The proposed MSE berm is a reinforced berm that is approximately 40 feet in height and taller than the existing berm so that a greater amount of waste can be contained in the adjacent disposal cells.

DEQ, in turn, asked the county for a LUCS for those changes. The county issued a LUCS for the MSE berm, concluding in its findings that the "MSE berm is a technical change only to the manner in which [respondent] constructs the perimeter berm of the landfill" and that it "continues the same use that was authorized in 1980."[4] Petitioners

---

[4] More particularly, the county determined that,

"[i]n its present application to DEQ, [respondent] is seeking only to modify its landfill operations—specifically, the manner in which it constructs the perimeter berm of the landfill—and is not seeking to add additional ancillary facilities as part of that application. The proposal is therefore wholly consistent with the existing land use authorization for landfill disposal within the PWS Zone at this site. Separately, [respondent] has submitted a [site design review] application for approval of new ancillary facilities relating to its entrance facilities. Consistent with [respondent's] prior approvals, such an application

disagreed with the county's determination and appealed the order to LUBA.

Before LUBA, respondent moved to dismiss the appeal, contending that the LUCS decision fell within one or more of the exclusions from the definition of "land use decision" at ORS 197.015(10) and, accordingly, fell outside of LUBA's jurisdictional authority under ORS 197.825(1). Respondent relied upon ORS 197.015(10)(b)(H), which provides that "land use decision" does not include a local government decision

> "[t]hat a proposed state agency action subject to ORS 197.180(1) is compatible with the acknowledged comprehensive plan and land use regulations implementing the plan, if:
>
> "(i) *The local government has already made a land use decision authorizing a use or activity that encompasses the proposed state agency action*;
>
> "(ii) The use or activity that would be authorized, funded or undertaken by the proposed state agency action is allowed without review under the acknowledged comprehensive plan and land use regulations implementing the plan; or
>
> "(iii) The use or activity that would be authorized, funded or undertaken by the proposed state agency action requires a future land use review under the acknowledged comprehensive plan and land use regulations implementing the plan[.]"

(Emphasis added.) Thus, the effect of ORS 197.015(10) and ORS 197.825(1) is to allow LUBA the authority to review the merits of a LUCS determination that a proposed state action is *not* compatible with local land use laws and to preclude such review of a LUCS determination of existing or potential compatibility, as described in ORS 197.015(10)(b)(H)(i), (ii).

LUBA concluded that the challenged decision was not a "land use decision" under ORS 197.015(10)(b)(H)(i). The board reasoned that the county authorized the landfill

---

is necessary because those facilities were not contemplated as part of the original site approval in 1980."

in 1980 through the adoption of the Goal 2 exception in the comprehensive plan. According to LUBA, that decision authorized a use that "'encompasses' construction of future disposal cells" for the landfill, and the construction of a higher berm for the disposal cells fits within that authorization.

In concluding that the LUCS was properly and completely based on a *past* land use decision (so that ORS 197.015(10)(b)(H)(i) applies), LUBA also decided that the county was correct in not basing the compatibility decision on the need for a *future* land use review, *i.e.*, that the MSE berm required site design review. LUBA noted:

"We understand petitioners to contend that the proposed landfill expansion constitutes 'development' and YCZO 1101 plainly requires that 'all' development in the county's Public Facilities zones undergo site design review, with no exceptions. If so, we understand petitioners to argue, additional authorizations are necessary, and the exception at ORS 197.015(10)(b)(H)(i) does not apply.

"However, YCZO 1101 and the YCZO in general are silent regarding whether site design review provisions apply to an otherwise outright permitted use, the expansion of which was authorized in an exception and comprehensive plan amendment and zone change decision that pre-dates adoption of those design review standards. When faced with that precise question in 1992, the board of commissioners chose not to require site design review for such an expansion. That choice flows naturally, if not inevitably, from the commissioners' conclusion that the 1980 decision authorized the sequential expansion of the landfill via continued construction of new disposal cells, including new berms, within the area zoned PWS. Because petitioners cite nothing in YCZO 1101 or elsewhere that purports to compel application of site design review provisions to development that, the county has determined, was authorized in the 1980 decision, petitioners have not demonstrated that further authorization is needed and that the exception at ORS 197.015(10)(b)(H)(i) is insufficient or does not apply to exclude the challenged decision from LUBA's jurisdiction."

(Footnote omitted.)

On review, petitioners claim that LUBA erred in dismissing the proceeding under ORS 197.015(10)(b)(H)(i).

They argue that the 1980 plan and zoning changes, including the goals exception, did not "authoriz[e] a use or activity that encompasses" the proposed MSE berm, that the county erred in concluding otherwise, and that LUBA erred in affirming the county's analysis in its LUCS and, accordingly, in dismissing the proceeding under ORS 197.015(10)(b)(H)(i). Specifically, petitioners contend that the 1980 plan and zoning changes authorized only the landfill described in the application for those changes and the exception findings and not the more intense and physically larger use facilitated by the MSE berm. In addition, petitioners argue that the 1980 decisions did not completely authorize any new facility that is required to obtain a site design review permit from the county before its construction or use and that the MSE berm is such a facility. Respondent counters that berms were contemplated and approved as part of, or "encompass[ed]" by, the 1980 land use decisions as necessary components of the approved landfill and that the county correctly interpreted its site design review ordinance to not require a permit for that type of development.

As noted, we conclude that LUBA did not err in determining that it lacked jurisdiction, because the county's LUCS is not a "land use decision" under ORS 197.015(10) (b)(H)(i). That is so because (1) the county's 1980 land use decisions specifically contemplated and explicitly authorized a landfill with berms, and the MSE berm is included or encompassed within the scope of that authorization, and (2) the 1992 interpretation of the county's site design review ordinance by its board to not require review of approved components of an expressly permitted land use was a reasonable construction of its site design review ordinance, so that (3) further land use review of the landfill use is not required by the county's land use regulations and the existing authorization is sufficient to qualify as a compatibility determination under ORS 197.015(10)(b)(H)(i). We examine each of those conclusions in turn.

Petitioners first argue that the 1980 county actions (the plan change and rezoning) were insufficient to "authoriz[e] a use or activity that encompasses" the proposed MSE berm under ORS 197.015(10)(b)(H)(i). Petitioners reason that those actions did not explicitly permit a particular type

of landfill, instead allowing only generic plan and zoning map changes to "Public Works Safety" in order to allow a use as a "sanitary landfill." Some particulars of the landfill design, however, were described in the application for the plan/zone change, as well as in the master plan approved as part of the conditional use floodplain permit.[5] And a specific form of landfill—one that was described as including "construction techniques, as part of the proposal, [that] include a berm to prevent leaching of the Yamhill River"—was examined as part of the adoption of the exceptions findings.[6] The legal effect of the comprehensive plan change and adopted exception findings, the zoning district amendment, and the conditional use floodplain permit was to authorize construction and operation of a landfill bounded by earthern berms and located on a 229-acre property zoned for that use, which use would expand within those boundaries over time.

We conclude that that authorization was sufficiently specific to "encompass" the western berm for the landfill and thereby exempt local review of the proposed state action from the definition of "land use decision" under ORS 197.015(10)(b)(H)(i).[7] The legal effect of the amendments to

---

[5] The county approved the conditional use floodplain permit through adoption of Order No. 80-262 by the board of county commissioners on May 7, 1980, the same day as the public hearing on the plan changes. The order allowed the deposit of fill on the floodplain of the South Yamhill River. The adopted findings describe a preliminary plan and a requirement of future approval of a "final master plan" for the development by the Army Corps of Engineers and the county planning commission. The described master plan was specific enough to provide detail on a proposed dike, roadways within the landfill area, the location of access to Highway 18, the area of monitoring wells, and water quality control measures.

[6] The 1980 plan exception was not implemented by restrictive zoning to limit the uses of the property to those justified by the exception. Subsequent to the county action, LCDC adopted OAR 660-004-0018(4)(a), which requires that, when a reasons exception is adopted, the "plan and zone designations must limit the uses, density, public facilities and services, and activities to only those that are justified in the exception."

[7] As noted, that statutory subsection is the first of three exemptions from the definition of "land use decision" in ORS 197.015(10)(b)(H). The exemptions, and other statutory changes to the state agency coordination processes required by ORS chapter 197, were enacted as House Bill (HB) 2230 in 2009. Or Laws 2009, ch 606, § 2. HB 2230 amended ORS 197.015(10)(b), as we have noted, to exclude from LUBA review authority a local government compatibility determination made because the state agency action (1) was authorized in a prior land use decision, (2) did not require local government land use review, or (3) is required to undergo future land use review. Analogously, ORS 197.015(10)(e) was amended

ORS 197.015(10) was to exempt from LUBA jurisdiction a local government or state agency compatibility decision that is based on either a past local government "land use decision authorizing [the] use or activity" or on particular allowances in the locality's land use regulations. Whether the county's LUCS determination was exempt from LUBA review under ORS 197.015(10)(b)(H)(i) depends upon whether the LUCS was based (1) on a past "land use decision," (2) that authorized a "use or activity," (3) which use or activity "encompass[ed]" the proposed MSE berm. We give "encompass" its ordinary meaning—that is, to "bring within" or to "include." *Webster's Third New Int'l Dictionary* 747 (unabridged ed 2002); *see PGE v. Bureau of Labor and Industries*, 317 Or 606, 611, 859 P2d 1143 (1993) ("[W]ords of common usage typically should be given their plain, natural, and ordinary meaning.").

Here, the county made previous "land use decision[s]" authorizing a particular landfill bounded by earthen berms on land that was zoned for that use. A "land use decision" is a "final decision or determination" by a county that "concerns the * * * application" of the goals, a comprehensive plan provision, or a land use regulation. ORS 197.015(10)(a). The particular determinations that were made earlier by the county were the plan and zoning changes involving the application of the goals and land use regulations, including the exceptions findings and the conditional use permit, authorizing fill on floodplain property, that was based on county land use regulations. Of those land use decisions, the exceptions findings and conditional use permit authorized or allowed a particular "use or activity"—a landfill at a certain location with certain use characteristics to evolve over time. That approved "use" included "a berm to prevent leaching of the Yamhill River." The different construction and modified

---

to exclude from the definition of "land use decision" those state agency land use decisions justified on the basis of a previous local government land use decision or otherwise allowed by general land use regulations. ORS 197.015(10)(e)(C). LCDC was delegated rule-making authority pursuant to ORS 197.180(3) to specify the sequence of related state and local land use decision-making. Or Laws 2009, ch 606, § 3. One of the stated purposes of those statutory changes was to "ensure that local land use decisions authorizing a use generally precede state agency decisions on permits for the use or for aspects of the use." Or Laws 2009, ch 606, § 1(4)(a). At the same time, the legislature intended to limit "multiple opportunities to appeal the same land use decision." Staff Measure Summary, Senate Committee on Environment and Natural Resources, HB 2230, June 1, 2009.

location of the proposed berm did not change the category of that previously allowed use—a perimeter earthen berm associated with continued operation of the landfill. That type of use is the same type of "use or activity" authorized by the proposed DEQ permit. As noted by the county in its findings, the "MSE berm is a technical change only to the manner in which [respondent] constructs the perimeter berm of the landfill. It therefore continues the same use that was authorized in 1980, and it continues that use on the same property, all of which is zoned PWS." Thus, the MSE berm use is encompassed or included within the previous approval of an earthern berm for the landfill. Accordingly, LUBA did not err in concluding that it lacked jurisdiction to review the LUCS under ORS 197.015(10)(b)(H)(i).

LUBA also did not err in concluding that the MSE berm use had been fully authorized and would not need further local land use approvals, specifically a site design review permit, so that the board's lack of jurisdiction appropriately rested on ORS 197.015(10)(b)(H)(i).[8] The LUCS determination was made by a county planning official but was based upon the 1992 order by the board of county commissioners on an earlier LUCS for renewal of the DEQ solid waste permit. In the 1992 order, the county board concluded that the 1982 site design review ordinance did not require a permit for "primary landfill cell development," including the "lateral or vertical development of the Landfill," i.e., the "size or height of the Landfill." According to the county board, site design review was required only for "modified or new facilities proposed or required as accessory uses to landfill operations."

The 1992 determination applied the site design review ordinance to the new land uses or activities proposed

---

[8] LUBA noted that, if site design review of the MSE berm were required, then it would lack jurisdiction under ORS 197.015(10)(b)(H)(iii) (no "land use decision" where the locality determines that the state agency use or activity "requires a future land use review under * * * land use regulations"). That conclusion assumes site design review is a "use review" for purposes of ORS 197.015(10)(b)(H)(iii), an assumption that is debatable. ORS 197.015(12)(a)(B) defines a "limited land use decision" to include a decision that regulates "the physical characteristics of a use permitted outright, including but not limited to site review and design review." Limited land use decisions are subject to approval processes under ORS 197.195 that differ from the procedures required to make a land use decision under ORS 197.763.

in the DEQ permit renewal. In effect, the county interpreted its site design review ordinance to apply to future proposed development and not to land uses or activities authorized as part of a previous land use decision that approved a development. YCZO 1101.01 states that the "site design review process is intended to guide future growth and development," providing a "framework to review commercial and industrial development proposals" in order to "resolve potential conflicts that may arise between proposed developments and adjacent uses." However, that same code section provides that it "shall apply to all development" in particular zoning districts. The county interpreted "all development" to mean all land uses or activities not approved earlier.

The county board based its construction of the site design review ordinance on a November 1, 1991, opinion by its county counsel. That opinion distinguished between the lack of need for site design review for landfill "development which was contemplated in the original application (such as additional landfill cells)" as opposed to required site design review for "development of substantial new facilities proposed or required as accessory uses to landfill operations." The county board's interpretation of YCZO 1101.01 to apply site design review processes to all new land uses and activities not approved earlier is a reasonable reconciliation of the ordinance provisions that countenance site design review processes for "future *** development" and also "all development."[9] We agree with LUBA's conclusion, noted earlier, that,

"[b]ecause petitioners cite nothing in YCZO 1101 or elsewhere that purports to compel application of the site design review provisions to development that, the county has determined, was authorized in the 1980 decision, petitioners have not demonstrated that further authorization is needed

---

[9] Were we directly reviewing the county board interpretation of YCZO 1101.01, we would be obliged under ORS 197.829 to affirm the interpretation as plausible and "not inconsistent with the 'express language' of the provisions at issue or the purposes or policies underpinning them." *Siporen v. City of Medford*, 349 Or 247, 266, 243 P3d 776 (2010) (requiring LUBA and judicial affirmance of a local governing body interpretation of its land use regulations under ORS 197.829 where that interpretation is plausible and not inconsistent with the text of the regulation or its underlying purposes or policies).

and that the exception at ORS 197.015(10)(b)(H)(i) is insufficient or does not apply to exclude the challenged decision from LUBA's jurisdiction."

We therefore conclude that the review proceeding was properly dismissed by LUBA under ORS 197.015 (10)(b)(H)(i).

Affirmed.