Argued and submitted May 3, 2019, affirmed July 15, 2020

WASTE NOT OF YAMHILL COUNTY,
an Oregon public benefit corporation,
dba Stop the Dump Coalition, and
McPhillips Farms, Inc.,
an Oregon corporation,
*Petitioners-Appellants,*

*v.*

YAMHILL COUNTY,
*Respondent-Respondent,*
*and*

RIVERBEND LANDFILL CO.,
an Oregon corporation,
*Intervenor-Respondent.*

Yamhill County Circuit Court
16CV41596; A165969

471 P3d 769

Waste Not of Yamhill County and McPhillips Farms, Inc. (petitioners) appeal a judgment entered in a writ-of-review proceeding that affirmed (1) Yamhill County's determination that Riverbend Landfill Co.'s proposed modification of the slope of existing landfill modules was compatible with Riverbend's existing land use authorization and the county's comprehensive zoning plan and land use regulations, and (2) the county's subsequent issuance of a favorable Land Use Compatibility Statement (LUCS) to that effect. On appeal, petitioners contend that the trial court erred when it granted Riverbend's motion for summary judgment, denied petitioners' cross-motion for summary judgment, and entered judgment in favor of Riverbend and the county, raising four assignments of error. Petitioners contend that, in issuing the LUCS, the county failed to follow the applicable procedure and improperly construed the applicable law, that the county's order is not supported by substantial evidence in the whole record, and that the trial court erred in concluding otherwise. *Held*: The county followed the applicable procedure to issue the LUCS and properly construed the applicable law. The county's order is also supported by substantial evidence in the whole record. The trial court did not err when it granted Riverbend's motion for summary judgment and denied petitioners' cross-motion for summary judgment because there is no genuine issue of material fact and Riverbend was entitled to judgment as a matter of law.

Affirmed.

Ladd J. Wiles, Judge.

Jeffrey L. Kleinman argued the cause and filed the briefs for appellants.

Casey M. Nokes argued the cause for respondent Riverbend Landfill Co. Also on the brief were Tommy A. Brooks and Cable Huston LLP.

No appearance for respondent Yamhill County.

Before Armstrong, Presiding Judge, and Tookey, Judge, and Shorr, Judge.

TOOKEY, J.

Affirmed.

**TOOKEY, J.**

Waste Not of Yamhill County and McPhillips Farms, Inc. (petitioners) appeal a judgment entered in a writ-of-review proceeding that affirmed (1) Yamhill County's determination that Riverbend Landfill Co.'s proposed modification of the slope of existing landfill modules was compatible with Riverbend's existing land use authorization and the county's comprehensive zoning plan and land use regulations, and (2) the county's subsequent issuance of a favorable Land Use Compatibility Statement (LUCS) to that effect.[1] On appeal, petitioners contend that the trial court erred when it granted Riverbend's motion for summary judgment, denied petitioners' cross-motion for summary judgment, and entered judgment in favor of Riverbend and the county, raising four assignments of error. For the reasons that follow, we affirm.

## I.   BACKGROUND

We take the following uncontested facts from the record in the writ-of-review proceeding, which includes the county's local government record. We begin with a description of the county's LUCS certification and its historical context.

Riverbend owns property in Yamhill County that is used as a solid waste disposal facility ("landfill"). In 1980, the county granted Riverbend a disposal franchise, and the county approved changes to its comprehensive plan and zoning map to designate and rezone Riverbend's property as "Public Works Safety" (PWS) from "agriculture/forestry large holding." The county's actions were necessary to allow the development of a "sanitary landfill" on the property, a permitted use in the PWS zoning district. At the time of the rezoning, the county operated under the provisions of its 1976 Yamhill County Zoning Ordinance (YCZO), which did not require site design review (SDR) for the development of any permitted uses within a property zoned as

---

[1] Riverbend Landfill Co. intervened in the writ-of-review proceeding and is a respondent on appeal. Respondent, Yamhill County, did not file a brief on appeal. Throughout this opinion, we refer to Riverbend Landfill Co. as "Riverbend" and we refer to Yamhill County as "the county."

PWS, including a landfill. The comprehensive plan amendment included an "exceptions statement" that justified the failure to apply the requirements of statewide planning Goals 3 (agricultural lands) and 4 (forest lands) to the plan change for the proposed landfill facility. *See* OAR 660-015-0000(3), (4). The exceptions statement justified a proposed nonresource use of the property for a landfill based on the need and lack of "alternative locations" for the proposed facility, as well as the consequences and compatibility of its operations with adjacent uses. The proposed use was described as a "sanitary landfill" that "will include a berm to prevent leaching of the Yamhill River."

At the same time, the county issued a conditional use permit for the deposit of fill on the part of the property located in the river's floodplain. Although the landfill approval was not subject to the SDR process, the conditional-use permit imposed conditions upon the engineering and construction of the proposed landfill, which had to be approved by the Department of Environmental Quality (DEQ). Riverbend obtained a solid waste disposal permit for the landfill from DEQ in 1981 and, shortly afterward, constructed the berm and initial disposal modules of the landfill and began operations.

In December 1982, after the landfill began operations, the county adopted a new YCZO for properties zoned as PWS, YCZO 802.01 (1982), that included SDR regulations under section 1101 of the YCZO. YCZO 1101.01 (1982) provided that the "site design review process is intended to guide future growth and development in accordance with the Comprehensive Plan and other related county ordinances." However, because the landfill was approved under the 1976 YCZO, the initial landfill plan was not subject to the 1982 SDR regulations but was still subject to DEQ permit review. Additionally, when the county approved changes to its comprehensive plan and zoning map to permit Riverbend's operation of the landfill in 1980, there were no limitations placed on the final grade or capacity of the landfill, other than the requirement for DEQ permit approval.

In 1990, Riverbend sought DEQ approval to renew its solid waste disposal permit. As part of the permit renewal,

Riverbend proposed to expand the landfill area within the rezoned property to include new disposal modules and to construct a new leachate holding lagoon as part of the stormwater management of the landfill. Although the county initially issued a LUCS indicating the proposed expansion was an outright permitted use, DEQ sought clarification of that determination because the county's PWS zoning ordinance had changed in 1982 to add the SDR requirement. DEQ asked the county for a new LUCS—which required the county to state whether the uses proposed by the application were compatible with the county's comprehensive zoning plan and land use regulations.[2]

In 1992, the county board of commissioners adopted an order that authorized a LUCS for Riverbend's permit renewal application to DEQ. The order determined that the landfill use, including its expansion within the existing property by adding new disposal modules, was authorized by the 1980 plan change and did not require an SDR or further land use approvals from the county. However, the order concluded that the leachate holding facility on the property was an accessory use to the landfill and required an SDR as a new facility. That order provided:

> "The land use approvals granted by the County in 1980 remain in effect, and need not be renewed because there

---

[2] Under ORS 197.180(1)(a) and (b), state agencies, including DEQ, are required to "take actions that are authorized by law with respect to programs affecting land use," in "compliance with the [statewide planning] goals, rules implementing the goals and rules implementing this section" and in "a manner compatible with acknowledged comprehensive plans and land use regulations." The Land Conservation and Development Commission (LCDC), in turn, has adopted rules requiring that local governments decide whether proposed state actions are compatible with local land use plans and regulations. OAR ch 660, div 31. In accordance with ORS 197.180, DEQ has adopted rules that require applicants to submit a LUCS to ensure that "activities determined to significantly affect land use are carried out in a manner that complies with the statewide land use goals and are compatible with acknowledged comprehensive plans." OAR 340-018-0000; *see* OAR ch 340, div 18. As we noted in *Grabhorn, Inc. v. Washington County*, 255 Or App 369, 371 n 1, 297 P3d 524, *rev den*, 353 Or 867 (2013),

> "[a] LUCS is a document [that] state agencies use to determine whether permits and approvals affecting land use are consistent with local government comprehensive plans. A LUCS is required for nearly all DEQ permits and certain other DEQ approvals and certifications that affect land use, including renewals of permits that involve a substantial modification or intensification of the originally permitted activity."

has been no change in the use of the site as a sanitary landfill. The operation and continued development of the Landfill will be contained within the original site approved by zone change and plan amendment in 1980. Only [Riverbend's] proposal to construct new facilities in conjunction with operation of the landfill require site design review approval. Included in these facilities are leachate collection facilities proposed to be constructed in the PWS zone. As an ancillary use necessary to the operation of the Landfill, the leachate facilities are a permitted use within the PWS zone; however, because they constitute new facilities, they are subject to site design review.

"* * * * *

"New required accessory uses such as a new leachate storage lagoon or new holding tanks, would be permitted uses (as accessory to a sanitary landfill). However, because those uses would be facilities, establishment of the uses would be subject to site design review under the 1982 ordinance. The County draws a distinction between the primary landfill [module] development which was contemplated in the original application and the development of modified or new facilities proposed or required as accessory uses to landfill operations.

"The continued development of solid waste disposal [modules] contemplated in the original approval of the rezone and comprehensive plan amendment remains an outright permitted use. No land use approvals made by the County imposed restrictions on the lateral or vertical development of the Landfill within the PWS zone. Issues relative to the engineering or environmental safety or appropriateness of landfill design and operation were left to be addressed by DEQ in its review of the Landfill's operating permit.

"Consistent with the land use approvals for the Landfill, the solid waste disposal franchise issued to [Riverbend] in advance of the land use approvals also included no restrictions on the size or height of the Landfill or the source of solid waste allowed to be disposed at the Landfill."

Additionally, attached to the 1992 order as exhibit H was a memorandum from the county's counsel to the Planning Department regarding land use approval requirements in response to DEQ's request for a LUCS. Counsel

advised the Planning Department that Riverbend's proposed development of new disposal modules within the rezoned property was not subject to the SDR provisions of the YCZO, but the new leachate holding facility was an accessory use to the landfill and would be subject to SDR approval as a new facility. Specifically, with regard to the development of the landfill modules within the rezoned property, counsel advised:

> "It is our opinion that the proposed elevations and final grade reference[d] in the DEQ letter are permitted uses which do not require site design review. We believe that the original 1980 plan amendment and zone change for the landfill contemplated the natural and progressive development of the landfill [modules]. Further, the county's action did not restrict elevations. In our opinion, issues related to the safety or appropriateness of elevations and final landfill grades are technical engineering issues properly addressed by DEQ in its review of the operations plan for permit renewal."

Thus, the board concluded, and the LUCS provided:

> "The use of the site as a landfill is an outright permitted use that is compatible with current county plan policies and land use regulations. The proposed changes in the leachate holding facilities are permitted accessory uses to a landfill in the PWS zone, but they require site design review approval.

> "The proposed permit renewal application is compatible with Yamhill County's comprehensive plan and land use regulations, subject to site design review requirements for new facilities as stated in county counsel's November 1, 1991 memorandum."

In 2012, Riverbend applied to DEQ for another modification of its solid waste disposal permit to, among other things, replace an earthen berm on the perimeter of its landfill with a "mechanically stabilized earthen" (MSE) berm so a greater amount of waste could be contained within its existing disposal modules.[3] As required by DEQ, in 2012,

---

[3] Riverbend also applied for the construction or modification of new facilities—a recycling facility, scales, a maintenance facility, and leachate storage tanks—which were subject to the SDR provisions of the YCZO. *McPhillips*

the county issued a LUCS for the MSE berm, concluding that the "MSE berm is a technical change only to the manner in which [Riverbend] constructs the perimeter berm of the landfill" and that it "continues the same use that was authorized in 1980." The county found once again, as it had in 1992, that "the continued development of [Riverbend's] landfill involving the creation, redesign, or expansion of waste disposal [modules] within the *** PWS *** Zone is an outright permitted use," and that "no land use approvals made by the County in the past have imposed restrictions on the lateral or vertical development of the landfill, or the continued operation of the landfill, within the PWS Zone."[4] Accordingly, the county concluded that Riverbend's landfill "operation and design plan, which includes the landfill's perimeter berm, is not subject to the county SDR process, although DEQ must still approve the permit which regulates design and operations." One of the petitioners in the present case disagreed with the county's determination that an SDR was not required for the construction of the MSE berm and appealed the order to the Land Use Board of Appeals (LUBA). *McPhillips Farm, Inc. v. Yamhill County*, 256 Or App 402, 407-08, 300 P3d 299 (2013).

Before LUBA, Riverbend moved to dismiss the appeal, contending that the county's LUCS decision fell within one of the exclusions from the definition of a "land use decision" under ORS 197.015(10), and, thus, fell outside LUBA's jurisdictional authority under ORS 197.825(1).

_____

*Farm, Inc. v. Yamhill County*, 256 Or App 402, 407, 300 P3d 299 (2013). As discussed above, according to the county's 1992 order, under YCZO 1101, SDR approval is required for the construction of "modified or new facilities proposed or required as accessory uses to landfill operations," such as the "leachate storage lagoon or new holding tanks." Riverbend separately requested a LUCS for only the MSE berm.

[4] More particularly, the county determined that,

"[i]n its present application to DEQ, [Riverbend] is seeking only to modify its landfill operations—specifically, the manner in which it constructs the perimeter berm of the landfill—and is not seeking to add additional ancillary facilities as part of that application. The proposal is therefore wholly consistent with the existing land use authorization for landfill disposal within the PWS Zone at this site. Separately, [Riverbend] has submitted a [SDR] application for approval of new ancillary facilities relating to its entrance facilities. Consistent with [Riverbend's] prior approvals, such an application is necessary because those facilities were not contemplated as part of the original site approval in 1980."

*Id*. at 408.[5] Riverbend relied on ORS 197.015(10)(b)(H)(i), which provides, that a "land use decision" does not include a local government decision

"[t]hat a proposed state agency action subject to ORS 197.180(1) is compatible with the acknowledged comprehensive plan and land use regulations implementing the plan, if:

"(i)   *The local government has already made a land use decision authorizing a use or activity that encompasses the proposed state agency action*[.]"

(Emphasis added.)[6]

LUBA concluded that the challenged decision was not a "land use decision" under ORS 197.015(10)(b)(H)(i), reasoning that the county authorized the landfill in 1980 through the adoption of the exceptions in the county's comprehensive plan. *Id*. at 408-09. According to LUBA, that decision authorized a use that "'encompasses' construction of future disposal [modules]" for the landfill, and that the construction of a higher berm for the disposal modules fits within that authorization. *Id*. at 409. In concluding that the LUCS was properly and completely based on a past land use decision, LUBA also decided that "the county was correct in not basing the compatibility decision on the need for a *future* land use review, *i.e.*, that the MSE berm required site design review." *Id*. (emphasis in original).

On judicial review, we concluded:

"LUBA did not err in determining that it lacked jurisdiction, because the county's LUCS [wa]s not a 'land use decision' under ORS 197.015(10)(b)(H)(i). That is so because (1) the county's 1980 land use decisions specifically contemplated and explicitly authorized a landfill with berms, and the MSE berm is included or encompassed within the

---

[5] ORS 197.825(1) provides, in part, that "the Land Use Board of Appeals shall have exclusive jurisdiction to review any land use decision or limited land use decision of a local government, special district or a state agency in the manner provided in ORS 197.830 to 197.845."

[6] ORS 197.015 has since been amended, but those amendments did not affect ORS 197.015(10)(b)(H)(i)'s definition, which precludes LUBA review of a LUCS determination of existing or potential compatibility, as described in ORS 197.015 (10)(b)(H)(i).

scope of that authorization, and (2) the 1992 interpretation of the county's site design review ordinance by its board to not require review of approved components of an expressly permitted land use was a reasonable construction of its site design review ordinance, so that (3) further land use review of the landfill use is not required by the county's land use regulations and the existing authorization is sufficient to qualify as a compatibility determination under ORS 197.015(10)(b)(H)(i)."

*Id*. at 410. Accordingly, we affirmed LUBA's dismissal of the petitioner's appeal. *Id*. at 415.

In 2014, the county rezoned Riverbend's landfill from PWS to Exclusive Farm Use ("EFU"). *See* ORS 215.283 (2)(k) (a "site for the disposal of solid waste approved by the governing body of a *** county *** and for which a permit has been granted under ORS 459.245 by the Department of Environmental Quality together with equipment, facilities or buildings necessary for its operation" is allowed as one of the nonfarm uses that may be permitted on any EFU-zoned land).[7] According to the county,

"[t]he purpose of rezoning the landfill to the EFU zone was to allow an expansion onto surrounding EFU-zoned lands and to allow Riverbend to make more efficient use of another adjacent property previously zoned as Recreational Commercial. The County did not intend for the rezoning process to alter or remove Riverbend's existing land use authority within the landfill's existing footprint."

Consistent with Riverbend's plan to expand the landfill on to surrounding EFU lands, Riverbend

"'filed applications for site design review and a floodplain development permit to authorize the proposed expansion. [Riverbend] proposed to add a new Module 10 north of the existing landfill site, and a new Module 11 southwest of the site. The proposed expansions would occupy land that qualifies as high-value farmland. [Riverbend] also proposed to

---

[7] Under ORS 215.296(1), a use allowed under ORS 215.283(2) on EFU-zoned land, such as the landfill in this case, may be approved only after the local governing body finds that the use will not "[f]orce a significant change in the accepted farm *** practices on surrounding lands devoted to farm *** use" or "[s]ignificantly increase the cost of accepted farm *** practices on surrounding lands devoted to farm *** use."

increase the height of existing berms and add additional fill to five existing modules. The proposed expansions would add 15 years of capacity to the landfill operation, which would otherwise reach full capacity in 2017.

"'The surrounding area consists largely of EFU-zoned lands in various agricultural uses * * *.'"

*Stop the Dump Coalition v. Yamhill County*, 284 Or App 470, 472-73, 391 P3d 932 (2017), *rev'd and rem'd*, 364 Or 432, 435 P3d 698 (2019) (quoting *Stop the Dump Coalition v. Yamhill County*, 72 Or LUBA 341, 347 (2015)). In 2015, "[t]he county approved the site design review and floodplain development permit applications, concluding that the expanded landfill did not force a significant change in accepted farm practices or significantly increase the cost of those practices." *Id*. at 473 (citing *Stop the Dump Coalition*, 72 Or LUBA at 358). Petitioner appealed the county's decision to LUBA, which ultimately resulted in judicial review by the Supreme Court. *See Stop the Dump Coalition*, 364 Or 432.[8]

That brings us to the LUCS that is at issue in this appeal. In 2016, while the *Stop the Dump Coalition* litigation was ongoing, Riverbend decided to separately apply to DEQ for authorization to add additional solid waste to existing modules within the current landfill. Before Riverbend submitted its modification application to DEQ, Riverbend requested the required LUCS from the county to document that the proposal was consistent with Riverbend's current land use authorization and the county's comprehensive zoning plan and land use regulations. The purpose of the application was to modify the existing grading plan that DEQ had already approved for Riverbend's landfill. Specifically, Riverbend's application proposed to "modify its currently approved grading plan along existing side slopes," and noted that the "modification occurs within the existing footprint

---

[8] As the Supreme Court explained, when Riverbend sought to expand its landfill onto the adjacent EFU land that it owned, Riverbend had to meet the "farm impacts test, set out in ORS 215.296." *Stop the Dump Coalition*, 364 Or at 434-35. After construing the farm impacts test under ORS 215.296 and deciding what the proper focus of that test is, the court determined that the SDR application needed to be reviewed under the standard it had articulated and "remand[ed] to the county to decide whether the cumulative impacts on each farm are significant." *Id*. at 459-63.

[of the landfill] and does not require expansion onto the existing property or any adjacent properties" and that the "overall height [of the landfill would] remain[] the same." Thus, Riverbend did not seek in its application to expand the landfill onto adjacent EFU lands as it had when it sought the SDR that was the subject of the *Stop the Dump Coalition* litigation discussed above.

The county issued a LUCS for the grade modification that would allow Riverbend to add solid waste to existing modules within the landfill. The county concluded that "the continued development of Riverbend['s] Landfill involving the creation, redesign, or expansion of waste disposal [modules] within the area that was previously zoned *** PWS *** is consistent with Riverbend's existing land use approvals in that area," and "that no land use approvals made by the county in the past have imposed restrictions on the lateral or vertical development of the landfill, or the continued operation of the landfill, within the previously-designated PWS zone."

The county also made several findings to support its issuance of the LUCS. In reaching those findings, the county reviewed documents relating to prior land use applications authorizing the development of Riverbend's landfill, as described above. The county concluded that it was "clear from the county's prior authorizations that the county has already made a land use decision authorizing the use that is encompassed in Riverbend's proposal for re-grading within the landfill's existing footprint."

The county observed that, when the county approved the zone change for the landfill in 1980, the county operated under the provisions of its 1976 zoning ordinance and that the landfill was an "outright permitted use" in the PWS zone, which did not require an SDR "for the development of any permitted uses, including a landfill," and "did not impose any height or grade restrictions on landfill development." The county also noted that, after operations at Riverbend's landfill commenced, the county modified the PWS zone to require an SDR in 1982. However, because Riverbend's landfill was initially approved under the 1976 ordinance, its "operation and design plan, which includes its grading plan,

was never subject to the county SDR process, although DEQ must still approve the permit which regulates design and operations."

The county also observed that its issuance of this LUCS was consistent with its interpretation of the zoning ordinance in 1992 when Riverbend applied to DEQ and sought a LUCS to accommodate a larger landfill and a new leachate holding pond. As discussed above, the county concluded that the proposed expansion within the landfill "remained an outright permitted use, because the 1980 application contemplated the natural and progressive development of landfill cells throughout the entirety of Riverbend's property included in the original application," but the facilities that had not been previously approved, such as the leachate holding pond, would have to go through the SDR process.

The county further observed that its decision was also consistent with its issuance of the 2012 LUCS to Riverbend. As noted, in 2012, Riverbend sought a LUCS from the county related to an expansion of the landfill by using an MSE berm. The county found that "[t]he MSE berm allowed Riverbend to utilize new areas that were outside of the landfill's footprint as it existed at that time, but within the original PWS zone that was part of [Riverbend's] initial application in 1980." The county determined that the proposed MSE berm "was compatible with Riverbend's original land use authority without further review" and found that "the proposal continues the same use that was authorized in 1980." The 2012 LUCS was appealed to LUBA, and LUBA "determined the LUCS was valid because the county's 1980 decision authorized the use of the entire property as a landfill, including expansions of the landfill on the property," and, therefore, was not a "land use decision." We affirmed LUBA's decision in *McPhillips Farm, Inc.*, 256 Or App 402.

Finally, the county noted that, although it had rezoned the landfill property from PWS to EFU in 2014, "[t]he purpose of rezoning the landfill to the EFU zone was to allow an expansion onto surrounding EFU-zoned lands and to allow Riverbend to make more efficient use of

another adjacent property previously zoned as Recreational Commercial," and that the county "did not intend for the rezoning process to alter or remove Riverbend's existing land use authority within the landfill's existing footprint."

In Riverbend's present application to DEQ and request for a LUCS, the county found that Riverbend was "seeking only to make technical modifications to its currently approved operations, including ensuring the graded areas are designed to magnitude 9.0 earthquake standards," and that Riverbend's "application to DEQ addresses only the manner in which it grades waste in the landfill; it does not seek to expand the landfill or to add new ancillary facilities as part of the application." Thus, the county concluded that Riverbend's proposal to modify the grade of the existing landfill was "wholly consistent with the existing land use authorization for landfill disposal previously approved at this site." Specifically, the county concluded that "further review under the county's acknowledged comprehensive plan and zoning ordinance" and an SDR were not required because "[t]he modified grading plan is a technical change only to the manner in which [Riverbend] operates within its currently-approved footprint," and it "continues the same use that was authorized in 1980, and it continues that use on the same property without reliance on the use of new land that has not previously been used for landfill activities."

Based on those findings and conclusions, the county "confirm[ed] that the continued development of solid waste disposal [modules] contemplated in Riverbend's original approval remains a permitted use," and, thus, "this LUCS is not a land use decision under the county's zoning ordinance."

Petitioners filed the present writ-of-review petition, alleging that the county erred by issuing the LUCS because the county "exceeded its jurisdiction" and failed to follow the proper procedure by issuing the LUCS when the modified grading plan was part of the SDR application being reviewed in the ongoing *Stop the Dump Coalition* litigation. Petitioners also alleged that the county had improperly construed the applicable law, and that the county's order approving the LUCS was not supported by substantial

evidence.[9] Accordingly, petitioners requested a declaration from the court "that the LUCS was unlawfully issued and is null and void and of no force and effect."

As noted, Riverbend filed an unopposed motion to intervene in the writ-of-review proceeding involving petitioners and the county. Riverbend and petitioners both moved for summary judgment.

Petitioners contended that Riverbend was barred from seeking a LUCS for the grade modification within the existing landfill, because Riverbend had included that proposed modification in its broader SDR application to expand the landfill onto its adjacent EFU-zoned land. Because that SDR was the subject of the pending *Stop the Dump Coalition* litigation, petitioners contended that "the doctrines of *res judicata* and claim and issue estoppel *** bar[red] the county from issuing any order stating that any part of [Riverbend's] project complies with its land use regulations." Petitioners also argued that the county's order was not supported by substantial evidence because the record contained no material from the SDR proceeding in the *Stop the Dump Coalition* litigation. Petitioners further contended that any reliance on our decision in *McPhillips Farm, Inc.*, was erroneous because that decision was issued when Riverbend's

---

[9] ORS 34.040(1) provides:

"The writ shall be allowed in all cases in which a substantial interest of a plaintiff has been injured and an inferior court including an officer or tribunal other than an agency as defined in ORS 183.310(1) in the exercise of judicial or quasi-judicial functions appears to have:

"(a) Exceeded its jurisdiction;

"(b) Failed to follow the procedure applicable to the matter before it;

"(c) Made a finding or order not supported by substantial evidence in the whole record;

"(d) Improperly construed the applicable law; or

"(e) Rendered a decision that is unconstitutional."

Petitioner's did not raise a claim in their writ-of-review petition that the county "rendered a decision that was unconstitutional" under ORS 34.040(1)(e). Additionally, on appeal, petitioners do not contend that the circuit court erred in affirming the county's decision on the grounds that the county "exceeded its jurisdiction" when it issued the LUCS. *See Crainic v. Multnomah Cty. Adult Care Home Program*, 190 Or App 134, 141, 78 P3d 979 (2003) ("The criteria set out in ORS 34.040(1) also constitute the legal standards that the circuit court is to apply in determining whether to affirm, modify, or reverse the action of the tribunal or officer whose action is being reviewed. ORS 34.100.").

landfill was zoned PWS, and it had since been rezoned as EFU so YCZO 402 and YCZO 1101 required an SDR. For similar reasons, petitioners contended that the county had "misconstrued the language and effect of its 1992 LUCS."

Riverbend argued that "[t]he underpinning of each of petitioners' arguments is their assumption and claim that the proposal described in the LUCS is part of the same proposal in the Expansion Application that was recently reviewed by the Court of Appeals and [the Supreme Court in *Stop the Dump Coalition*,] which has now been remanded back to the county." Riverbend contended that, although its expansion application which necessitated a SDR in the *Stop the Dump Coalition* litigation and its application for a LUCS in this litigation would both "result in placing some waste on top of existing waste, that is their only common factor, and the distinction between a proposal to expand the landfill and a proposal to re-shape the existing landfill is meaningful, undermining each of petitioners' arguments with respect to the writ-of-review criteria."

Riverbend noted that it was undisputed that its expansion plan onto adjacent EFU land required an SDR, but that under YCZO 1101.04, it was "required to submit plans for the entire site" as part of that process. Riverbend asserted that "[t]he only reason that an SDR permit was required was because of the portion of the Expansion Application that moves the existing landfill onto new areas beyond its currently-approved site" and, "[o]nce the expansion triggered the SDR process, Riverbend had to include the entire site in its application." In Riverbend's view, "[h]ad [Riverbend's] proposed expansion been entirely within its current authorization, no SDR permit would be needed," and "[t]hat is exactly the kind of proposal presented in th[is] LUCS, and which the Court of Appeals approved of in" *McPhillips Farm, Inc.*

Additionally, Riverbend contended that the rezoning of the current landfill did not necessitate an SDR in this case, because "the EFU zoning impacts are not retroactively applicable" to its original authority to operate the landfill on the existing site, the county expressly found in its order that the zone change to EFU did not divest Riverbend of

that authority, and petitioner did not challenge that finding. Consequently, Riverbend contended that the county properly concluded that, based on Riverbend's undisputed authority granted from the county in 1980 to operate a landfill on the current site, the county's prior LUCS approvals in 1992 and 2012, and our decision in *McPhillips Farm, Inc.*, the proposed grade modification fell within its existing scope of authority to operate a landfill, and, thus, the county properly "concluded that the proposal described in the LUCS request is consistent with [Riverbend's] current authority and that no additional approval is needed."

The trial court granted Riverbend's motion for summary judgment and articulated its reasons at the hearing for doing so:

"I will grant the Motion for Summary Judgment as requested by the Respondents Riverbend and the County. The County appears to me to have acted within its jurisdiction following the appropriate procedures supported by the record and it's consistent with the applicable law.

"I don't find really any authority for the petitioners' suggestions that they needed to make expansive findings about how this complies with or meshes with the [SDR in the *Stop the Dump Coalition* litigation]. They are two separate things. They are site design review and land use compatibility statement, just by their names of the, the titles of those things, they are different.

"They are not estopped or subject to *res judicata*. It's as if Riverbend is pursuing a possible back-up plan or an interim plan that's different and separate and apart from the site design review which is caught up in some sort of appeals. And there is no authority that I find in case law, statute or otherwise that says they are not allowed to pursue a back-up plan such as this.

"They made the legal arguments as to why the zone change to EFU doesn't apply to the LUCS. And actually, those findings are in the findings that are attached to the LUCS. I mean I think it is paragraph six addresses the change in the zone and explains why this LUCS application is consistent with the land use law that applies to Riverbend at the time which is why I find that the LUCS was appropriately issued. So I'll grant the summary judgment in favor of Riverbend and the county."

In its order granting Riverbend's motion for summary judgment and denying petitioners' cross-motion for summary judgment, the court concluded:

"Petitioners failed to provide a basis to reverse or annul the LUCS issued in this case. In issuing the LUCS, [the county] acted within its jurisdiction, followed proper procedure, and made findings supported by substantial evidence in the record. [The county] properly construed the applicable law. *** [Riverbend] correctly cites *McPhillips Farm, Inc. v. Yamhill County*, 256 Or App 402 (2013), as support for [the county's] findings.

"The expansion project is separate and distinct from the proposal that triggered the LUCS. The issues are not the same. *** Petitioners' reliance on legal principles of *res judicata* and *estoppel* is not well taken.

"There is no genuine issue as to any material fact. *** [Riverbend and the county are] entitled to prevail as a matter of law."

Accordingly, the trial court entered judgment in favor of Riverbend and the county.

## II.   ANALYSIS

"[W]e review the trial court's affirmance of the county's determination for errors of law; that is, we ask whether the trial court correctly applied ORS 34.040." *Davis v. Jefferson County*, 239 Or App 564, 571, 245 P3d 665 (2010). As noted, ORS 34.040(1) provides, in pertinent part:

"The writ shall be allowed in all cases in which a substantial interest of a plaintiff has been injured and an inferior court including an officer or tribunal other than an agency as defined in ORS 183.310(1) in the exercise of judicial or quasi-judicial functions appears to have:

"*****

"(b)   Failed to follow the procedure applicable to the matter before it;

"(c)   Made a finding or order not supported by substantial evidence in the whole record; [or]

"(d)   Improperly construed the applicable law[.]"

On appeal, petitioners raise four assignments of error, all of which relate to the trial court's allowance of Riverbend's motion for summary judgment, its denial of petitioners' cross-motion for summary judgment, and its entry of judgment in favor of Riverbend and the county in the writ-of-review proceeding.

A.   *First Assignment of Error*

In their first assignment of error, petitioners argue that the trial court erred because, "under the newly applicable EFU zoning of the landfill" and "the applicable county regulation," Riverbend's application for a DEQ permit for grade modification required the county to conduct a SDR, and, therefore, "[t]he county's LUCS certification improperly construed the applicable law" under ORS 34.040 (1)(d). Riverbend contends that "ORS 215.296 and YCZO 402.02 are not applicable to the proposal in the LUCS" because Riverbend's landfill "was approved when that statute and ordinance did not apply to the subject site," and, "[a]lthough the County did rezone [Riverbend's] property to the Exclusive Farm Use zone, making ORS 215.296 applicable to *future* developments, the rezoning process does not act to retroactively apply new standards to existing development that has already been approved." (Emphasis in Riverbend's brief.).

We understand petitioners' main argument to rest on the proposition that, when a county rezones an area, as the county did here, it must reapprove existing uses, applying the land use standards that are in effect at the time of the rezoning, before it can issue a LUCS. As explained below, we disagree. Rezoning does not require application of new standards to existing uses. There is nothing in ORS 215.296 or YCZO 402.02 that indicates that the statute's or the ordinance's requirements apply retroactively. And, finally, we do not understand the LUCS process to independently require the county to apply the SDR standards to an existing use if the use is otherwise consistent with its comprehensive plan and prior land use approvals.

Here, Riverbend's use of the property for a landfill was approved in 1980. As explained below, petitioners have not demonstrated any error in the county's determination

that that approval, and, accordingly, Riverbend's existing use, includes the continuous and progressive development of solid waste disposal modules in the existing landfill, including the grade modification at issue here. Therefore, the county did not misconstrue the applicable law when it concluded that an SDR and review under ORS 215.296 were not required as a result of the rezoning.

As a general matter, land use regulations do not apply to uses in existence when the regulations are enacted. ORS 215.130(5) provides that "[t]he lawful use of any building, structure or land at the time of the enactment or amendment of any zoning ordinance or regulation may be continued." Thus, when a county rezones an area, it does not need to reevaluate existing approved uses for compliance with the new regulations. *See Grabhorn v. Washington County*, 279 Or App 197, 203-04, 379 P3d 796, *rev den*, 360 Or 568 (2016) (noting that "a person is entitled to continue a nonconforming use of land, so long as that use was lawful before a change in zoning made that use nonconforming," and explaining what is necessary to establish a continuous nonconforming use (internal quotation marks omitted)).

Consistently with that general principle, ORS 215.296(1) does not apply retroactively to land use approvals that occurred before the enactment of that statute. "Whether a statute applies prospectively or retroactively is a question of legislative intent, determined by applying the usual principles of statutory construction." *Lovinger v. Lane County*, 206 Or App 557, 565, 138 P3d 51, *rev den*, 342 Or 254 (2006).

As noted above, under ORS 215.296(1), "a use allowed under *** ORS 215.283(2)" on EFU-zoned lands, "may be approved only where the local governing body *** finds that the use will not" "[f]orce a significant change in the accepted farm *** practices on surrounding lands devoted to farm *** use" or "[s]ignificantly increase the cost of accepted farm *** practices on surrounding lands devoted to farm *** use."

The text of ORS 215.296 contains no mention of retroactivity. *See State ex rel Juv. Dept. v. Nicholls,* 192 Or

App 604, 609, 87 P3d 680 (2004) (noting that, in examining the text, the court looks first for the presence of an explicit retroactivity clause). Although not conclusive, the absence of a retroactivity clause is evidence that the legislature did not intend for the statute to apply retroactively. *See State v. Lanig*, 154 Or App 665, 670-71, 963 P2d 58 (1998) (noting that the absence of a retroactivity clause "strongly suggests" that the legislature did not intend retroactive application because such clauses are easily added and are commonly employed by the legislature).

Moreover—and, again, consistently with ORS 215.130(5)—the text of ORS 215.296(1) also indicates that the legislature intended the farm impacts test, set out in ORS 215.296(1), to be applied to prospective approvals for uses allowed under ORS 215.283(2) on EFU-zoned lands, and not retroactively to prior approvals, such as the landfill in this case. Again, ORS 215.296(1) provides that the "use" of EFU-zoned lands for a landfill "may be *approved* only where the local governing body finds that" the farm impacts test has been met. (Emphasis added.). Here, Riverbend's "use" of the property as a landfill had been finally approved in 1980, before ORS 215.296 was in effect, and that use has been continuous ever since. *See Von Lubkin v. Hood River County*, 133 Or App 286, 290, 891 P2d 5 (1995) (concluding that "ORS 215.296(1) applies to the approval of the use" on EFU-zoned lands and, because the respondent's use of the land for a golf course "ha[d] not been finally approved, and the statute [wa]s in effect," ORS 215.296(1) was not being applied retroactively). For those reasons, we conclude that the legislature did not intend for ORS 215.296(1) to apply retroactively to continuous uses, such as Riverbend's landfill, that had already been approved before that statute was enacted.

We reach the same conclusion with regard to the retroactivity of YCZO 402.02(V), the ordinance that implements ORS 215.296(1) and requires SDR approval for certain uses on land zoned as EFU—*viz.*, that the rezoning process did not nullify the county's previous approval for Riverbend's land to be used as a landfill or require the county to retroactively apply the SDR provisions of the YCZO to Riverbend's prior authorization to operate a landfill.

"The proper construction of a municipal ordinance is a question of law, which we resolve using the same rules of construction that we use to interpret statutes." *City of Eugene v. Comcast of Oregon II, Inc.*, 359 Or 528, 540, 375 P3d 446 (2016).

YCZO 402.02(V) provides:

"The maintenance, expansion or enhancement of an existing site on the same tract for the disposal of solid waste for which a permit has been granted under ORS 459.245 by the Department of Environmental Quality, together with equipment, facilities or buildings necessary for its operation [is a permitted nonfarm use on land zoned as EFU]. The use must satisfy the standards set forth in ORS 215.296 (1)(a) and (b) and the standards set forth in Section 1101 [of the YCZO], Site Design Review. The maintenance, expansion or enhancement of an existing use on the same tract on high-value farmland is permissible only if the existing use is wholly within a farm use zone. No other Yamhill County Zoning Ordinance criteria or Comprehensive Plan goal or policy shall apply as an approval standard for this use."

As a general matter, we observe that there is no retroactivity clause in YCZO 402 or YCZO 1101, the latter of which sets out the standards that must be met and the process for obtaining an SDR from the county.[10] Indeed, if there were such a provision, the ordinance would seem to conflict with ORS 215.130(5), which, as noted above, provides that "[t]he lawful use of any building, structure or land at the time of the enactment or amendment of any zoning ordinance or regulation may be continued."

The county and the trial court determined that the county's prior land use authorizations and our decision in *McPhillips Farm, Inc.*, showed that the grade modification

_____

[10] YCZO 1101.01 provides:

"The site design review process is intended to guide future growth and development in accordance with the Comprehensive Plan and other related county ordinances, to provide for an effective process and framework to review commercial and industrial development proposals, to insure safe, functional, energy-efficient developments which are compatible with the natural and man-made environment, and to resolve potential conflicts that may arise between proposed developments and adjacent uses. This section shall apply to all development in all Commercial, Industrial, and Public Facilities Districts, all development in the PRO District, and all other uses as may be required by this ordinance in the AF, EF, F-80, AF-10, VLDR and LDR Districts."

at issue here was allowed as part of Riverbend's existing use of the property for a landfill; that is, they concluded that the grade modification was not subject to the SDR requirement of YCZO 1101.01 under YCZO 402.02.

As we observed in *McPhillips Farm, Inc.*:

> "In the 1992 order, the county board concluded that the 1982 site design review ordinance[, YCZO 1101,] did not require a permit for 'primary landfill cell development,' including the 'lateral or vertical development of the Landfill,' *i.e.,* the 'size or height of the Landfill.' According to the county board, site design review was required only for 'modified or new facilities proposed or required as accessory uses to landfill operations.'"

256 Or App at 413. Additionally, when reaching that conclusion, the county relied on its counsel's memorandum, which stated that "the original 1980 plan amendment and zone change for the landfill contemplated the natural and progressive development of the landfill [modules,]" and "issues related to the safety or appropriateness of elevations and final landfill grades are technical engineering issues properly addressed by DEQ in its review of the operations plan for permit renewal." Thus, the county determined the SDR provisions of YCZO 1101 did not apply to development that was approved by the county in its 1980 decision to authorize Riverbend's landfill, such as the development of the landfill modules and the final landfill grades. We concluded that "[t]he county board's interpretation of YCZO 1101.01 to apply site design review processes to all new land uses and activities not approved earlier is a reasonable reconciliation of the ordinance provisions that countenance site design review processes for 'future *** development' and also 'all development.'" *Id*. at 414. In the absence of any persuasive argument to the contrary from petitioners, we adhere to that conclusion. *Aguilar v. Washington County*, 201 Or App 640, 648, 120 P3d 514 (2005), *rev den*, 340 Or 34 (2006) (we "do not lightly overrule" precedent and regard it as binding unless it is "plainly wrong").

As noted above, YCZO 402.02(V) provides:

> "The maintenance, expansion or enhancement of an existing site on the same tract for the disposal of solid waste for

which a permit has been granted under ORS 459.245 by the Department of Environmental Quality, together with equipment, facilities or buildings necessary for its operation [is a permitted nonfarm use on land zoned as EFU]."

However, that "use must satisfy the standards set forth in ORS 215.296(1)(a) and (b) and the standards set forth in Section 1101, Site Design Review." *Id*. Given that, under YCZO 402.02(V), "[t]he use must satisfy the standards set forth in ORS 215.296(1)(a) and (b) and the standards set forth in Section 1101" of the YCZO for SDR approval, neither of which apply retroactively to activities that fall within Riverbend's prior authorization to operate its landfill, the county's interpretation of YCZO 402.02(V) to apply the SDR processes under YCZO 1101.01 only to all *future* maintenance, expansions, or enhancements that had not been approved earlier is a reasonable reconciliation of those ordinance provisions.[11] That is especially true where, as here, the county had already determined that the SDR process under YCZO 1101.01 only applies to "future growth and development" and not to activities that fall within existing earlier land use approvals, and we approved of that interpretation in *McPhillips Farm, Inc.*

---

[11] Indeed, if the county had concluded otherwise, the SDR processes would apply to *any* maintenance that Riverbend performed on its existing landfill under YCZO 402.02(V), regardless of whether that maintenance was wholly consistent with Riverbend's earlier land use approvals and the county's comprehensive plan. If petitioners' interpretation were correct, Riverbend could not continue to perform the necessary maintenance to safely operate its landfill before it went through the extensive SDR process under YCZO 1101.01, even though the land had already been approved for that use. Accordingly, the county reasonably concluded that YCZO 402.02(V) did not independently require the county to conduct an SDR under YCZO 1101.01 to issue a LUCS for Riverbend's earlier approved uses that are compatible with the county's comprehensive plan. Furthermore, the LUCS process did not independently require the county to apply the SDR standards under YCZO 1101.01 to Riverbend's existing use, because Riverbend's proposed grade modification is consistent with the county's comprehensive plan and prior land use approvals. However, we note that, under YCZO 402.02(V), the SDR provisions of YCZO 1101.01 do apply to "future growth and development" and, as such, any maintenance, expansion, or enhancement that Riverbend proposes that does not fall within the ambit of Riverbend's earlier land use approval will not be compatible with the county's comprehensive plan unless the proposal meets the standards for SDR set forth in YCZO 1101. *See e.g.*, *Stop the Dump Coalition*, 364 Or at 435 (Riverbend's proposal to expand the landfill onto adjacent EFU-zoned land that it owns is allowed as one of the 27 nonfarm uses that may be permitted on any EFU-zoned land under ORS 215.283(2)(k) only if approved by the county under the SDR provisions of YCZO 1101 and if the expansion complies with the farm impacts test set forth in ORS 215.296(1)).

Thus, we conclude that the county reached a reasonable conclusion that YCZO 402.02(V) did not require it to conduct an SDR for the landfill uses that were authorized in 1980 and have continued ever since, "such as additional landfill cells" within the existing landfill property, "as opposed to [the] required site design review for 'development of substantial new facilities proposed or required as accessory uses to landfill operations.'" *McPhillips Farm, Inc.*, 256 Or App at 414. As such, the county correctly concluded that Riverbend's proposed modification of the grade of the existing landfill modules was compatible with the county's comprehensive plan, because the proposal did not implicate future developments that fell outside of Riverbend's existing land use approval and, hence, did not require SDR.

Furthermore, the county and the trial court correctly concluded that the rezoning process did not "alter or remove [Riverbend's] existing land use authority within the landfill's existing footprint." *See* ORS 215.130(5) ("The lawful use of any *** land at the time of the enactment or amendment of any zoning ordinance or regulation may be continued."); *Grabhorn*, 279 Or App at 203-04 (to prove the existence of a nonconforming use under ORS 215.130, the applicant must establish that the use continued uninterrupted for a specified period of time and "that the use was lawful at the time a zoning ordinance or regulation went into effect" (internal quotation marks omitted)); *Lawrence v. Clackamas County*, 180 Or App 495, 501, 43 P3d 1192, *rev den*, 334 Or 327 (2002) (observing that, under ORS 215.130(5), a person is entitled to "continue a nonconforming use of land, so long as that use was lawful before a change in zoning made that use nonconforming"); YCZO 1205 (nonconforming uses may be continued, but alterations, restorations, or replacements are subject to review criteria specified in the YCZO).

In its present application to DEQ, Riverbend was seeking only to continue its landfill operations under its prior land use approval—specifically, the manner in which it constructs the grade of the existing landfill modules, including ensuring the graded areas are designed to magnitude 9.0 earthquake standards—and was not seeking to

add additional ancillary facilities or expand the landfill onto adjacent EFU-zoned land as part of that application. Therefore, Riverbend's proposal to modify the grade of the existing landfill modules is within the scope of Riverbend's existing land use authorization to operate a landfill, which is permitted as a continuous use within the EFU zone at Riverbend's current site. Accordingly, the trial court did not err when it concluded that, in issuing the LUCS certification, the county properly construed the applicable law under ORS 34.040(1)(d).

B.   *Second Assignment of Error*

    In their second assignment of error, petitioners contend that, because the SDR application in the *Stop the Dump Coalition* litigation also included a proposal to modify existing landfill modules as part of the larger expansion, Riverbend's application for a LUCS in this case to modify the grade of the landfill modules "was barred by the doctrines of *res judicata* and claim and issue estoppel." Accordingly, petitioners argue that, under ORS 34.040(1)(d), the county "improperly construed the applicable law," and that the trial court erred in concluding otherwise. Riverbend argues that the "[e]xpansion application (subject to appeal in [the *Stop the Dump Coalition* litigation]) is an entirely separate category of activity both factually and procedurally from the modified grade permit at issue here," and, thus, Riverbend's application for a LUCS in this case to modify the grade of the landfill modules was not barred by the doctrines of claim and issue preclusion.

    We agree with Riverbend. While both proposals included Riverbend's request to add solid waste to existing modules, the expansion application at issue in the *Stop the Dump Coalition* litigation involves a change to the perimeter berm of the existing landfill that expands the landfill footprint, and the major part of the expansion application involves expanding the facility to an adjacent parcel of EFU land, which is indisputably subject to the SDR provisions of the YCZO and ORS 215.296(1). *See Stop the Dump Coalition*, 364 Or at 435-36. On the other hand, the proposal in the application for a LUCS does not include any expansions of the existing perimeter, and the only change Riverbend

sought was in the shape of the landfill modules within the landfill's existing parcel, which is not subject to the SDR provisions of the YCZO. In this case, the trial court was applying the writ-of-review standard to determine whether the county exceeded its authority in issuing a LUCS and finding that the modified grade permit was within the original footprint of the landfill and consistent with the use it had approved in 1980 so DEQ could issue a permit. Accordingly, different facts, transactions, and legal standards applied to the expansion application at issue in the *Stop the Dump Coalition* litigation.

The issue of whether the modified grade permit is compatible with local land use regulations and whether the activity covered by that permit was within the scope of Riverbend's existing land use authority, and, thus, not subject to the SDR provisions of the YCZO, was not actually litigated in the *Stop the Dump Coalition* litigation and is not essential to a final decision on the merits in that case. *See Nelson v. Emerald People's Utility Dist.*, 318 Or 99, 104, 862 P2d 1293 (1993) (issue preclusion requires that "[t]he issue in the two proceedings is identical" and that the "issue was actually litigated and was essential to a final decision on the merits in the prior proceeding"). Additionally, Riverbend's application for a LUCS was not based on the same factual transaction that prompted the *Stop the Dump Coalition* litigation. *See Hawkins v. 1000 Limited Partnership*, 282 Or App 735, 749, 388 P3d 347 (2016) (claim preclusion requires that the second claim is "based on the same factual transaction"); *Lawrence*, 180 Or App at 503 (observing that "land use is not static," that "[t]he general doctrine of claim preclusion does not deny an applicant the right to file a successive application that an ordinance specifically permits to be filed," and that, "[i]f one proposal for development is denied, land use ordinances [generally] anticipate and allow for additional attempts for modified, or even the same, development"); YCZO 1301.03 ("If an application is denied, no new application for the same or substantially similar action shall be filed for at least one year from the effective date of decision."). Here, because the applications involved different facts, transactions, and legal standards, and because the YCZO allows additional attempts for modified, or even

the same, development, we conclude that the trial court did not err when it rejected petitioners' claim and issue preclusion arguments and concluded that the county properly construed the applicable law under ORS 34.040(1)(d) when it issued the LUCS.

C.  *Third Assignment of Error*

In petitioners' third assignment of error, petitioners contend that the county's findings in the order issuing the LUCS are "not supported by substantial evidence in the whole record" under ORS 34.040(1)(c), and, thus, the trial court erred when it concluded otherwise. Petitioners argue that the record the county relied on to issue the LUCS was insufficient to support the order because it did not contain information regarding the expansion application that is the subject of the *Stop the Dump Coalition* litigation. However, as we explained above, the issues in the two cases are entirely different, and the county did not need to consider Riverbend's plan to expand the landfill to adjacent EFU-zoned land to reach a conclusion that the modified grade permit is compatible with its local land use regulations, and that the activity covered by that permit was within the scope of Riverbend's existing land use approval.

As to petitioners' contention that the county's findings are otherwise not supported by substantial evidence in the whole record, we disagree. "In a writ-of-review proceeding, substantial evidence in the record exists to support a finding when the record, viewed as a whole, would permit a reasonable person to make that finding." *Crainic v. Multnomah Cty. Adult Care Home Program*, 190 Or App 134, 142, 78 P3d 979 (2003).

The county reviewed Riverbend's LUCS application, which proposed to "modify its currently approved grading plan along existing side slopes," and stated that the "modification occurs within the existing footprint and does not require expansion on to the existing property or any adjacent properties." Additionally, the county reviewed a topographical map of the landfill indicating the area that would be the subject of the modified grade permit, and it also reviewed county records relating to Riverbend's

authority to operate a landfill and other documents relating to Riverbend's prior land use applications authorizing the development of Riverbend's landfill, including our decision in *McPhillips Farm, Inc*. All of the county's findings are supported by that evidence, that is, the evidence would permit a reasonable person to make the findings that the county did to support its issuance of a LUCS. Accordingly, we conclude that the trial court did not err when it concluded that the county's order was "supported by substantial evidence in the whole record" under ORS 34.040(1)(c).

D.   *Fourth Assignment of Error*

        In their fourth assignment of error, petitioners contend that, "[u]nder ORS 215.296(1) and YCZO 402.02(V), it was necessary for the county to undertake site design review before issuing a favorable LUCS certification to DEQ." Because the county did not do so, petitioners argue that the county "[f]ailed to follow the procedure applicable to the matter before it" under ORS 34.040(1)(b). However, for the reasons discussed above in subsection A, *see* 305 Or App at 454-61, it was not necessary for the county to undertake SDR approval before issuing a favorable LUCS certification to DEQ for the modified grade permit, because that proposal is consistent with Riverbend's original site approval in 1980 and the county's comprehensive zoning plan and land use regulations. ORS 215.296(1) and YCZO 402.02(V) do not apply retroactively to require Riverbend to obtain SDR approval for the uses that were authorized by the county in 1980. Accordingly, we conclude that the trial court did not err when it concluded that the county "follow[ed] the procedure applicable to the matter before it" under ORS 34.040(1)(b).

## III.   CONCLUSION

        The county followed the applicable procedure to issue the LUCS and properly construed the applicable law. The county's order is also supported by substantial evidence in the whole record. The trial court did not err when it granted Riverbend's motion for summary judgment and denied petitioners' cross-motion for summary judgment because "there is no genuine issue of material fact and * * * [Riverbend was] entitled to judgment as a matter of law."

*Robinson v. Lamb's Wilsonville Thriftway*, 332 Or 453, 455, 31 P3d 421 (2001).

Affirmed.